UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CORRIE A. MIDDLETON,

            Plaintiff,

v.                                                    Case No.  8:11-cv-303-T-17AEP

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplement Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, I recommend the Commissioner's decision be affirmed.

## I.

### 1.      Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI, claiming disability beginning December 10, 2004 (Tr. 81-83, 559-61).  The Commissioner denied her claims both initially and upon reconsideration (Tr. 47-49, 51-53).  Plaintiff then filed a timely request for an administrative hearing, which was later held and at which Plaintiff appeared and testified (Tr. 44,

604-627). Following the hearing, the ALJ issued an unfavorable decision (Tr. 12-24). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 3-8). Plaintiff then timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## 2. Factual Background

Plaintiff, who was born on March 31, 1970, claims disability beginning on December 10, 2004 (Tr. 81, 559, 607). Plaintiff has the vocational equivalent to an Associate's Degree (Tr. 608) and has past relevant work as a medical bill collector, file clerk, and inventory specialist (Tr. 92, 145, 609-10). Plaintiff alleges disability due to bipolar mood disorder, post-traumatic stress disorder secondary to childhood abuse, personality disorder traits, chronic back pain, and asthma (Tr. 17, 21-23).

## 3. The ALJ's Decision

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability (Tr. 17). The ALJ found that Plaintiff had the following severe impairments: affective disorder and drug and alcohol abuse in sustained remission (Tr. 17-21). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). In particular, the ALJ considered Sections 12.04 and 12.09, which address the affective disorders and substance addiction disorders, and concluded that the record failed to show that Plaintiff's impairments are attended by findings specified in those

Sections (*id.*).

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work with moderate limitations in concentration, persistence and pace, and social functioning (*id.*).[1]  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's symptoms and the extent to which those symptoms could be accepted as consistent with the evidence of record, including the opinion evidence (*id.*).  The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment (*id.*).  Based on the Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert ("VE"), the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as produce inspector, equipment tester, and medication mailer  (Tr. 24).  Accordingly, the ALJ found Plaintiff not disabled (*id.*).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to

---

[1]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g),

4

416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given

to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that the ALJ erred by (1) failing to provide the required Psychological Review Technique Form documentation or analysis; (2) failing to find severe impairments of PTSD, borderline personality traits, asthma, and degenerative disc disease or to properly consider these severe impairments in assessing Plaintiff's RFC; and (3) discrediting the opinion of Dr. Teller and affording improper weight to the opinions of Dr. Gleason, Dr. Trimmer, Dr. Dubro, and Dr. Chandarana. As detailed below, the ALJ applied the correct legal standards and the decision is supported by substantial evidence.

### 1.    Psychiatric Review Technique Form

Plaintiff argues that the ALJ erred by not completing the Psychiatric Review Technique

Form ("PRTF") or incorporating in his decision an analysis which complies with the "special technique" dictated by the PRTF for evaluating mental impairments. According to Plaintiff, the ALJ did not comply with these requirements and made no attempt to follow the mode of analysis in his decision. Agency regulations require a "special technique" be used by the ALJ when evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a; *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). Essentially, this technique requires an assessment regarding how the claimants's mental impairments impact four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the degree of limitation, the Commissioner employs a five-point scale in the first three functional areas (none, mild, moderate, marked, and extreme) and a four-point scale for the fourth functional area (none, one to two, three, and four or more). 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique, including any significant history related to the impairment and must make a specific finding as to the degree of limitation for each of the functional areas. 20 C.F.R. § 404.1520a(e)(4), 416.920a(e)(4). Where an ALJ fails to complete a PRTF and append it to the decision or fails to incorporate the PRTF mode of analysis into the findings and conclusions, remand is warranted. *Moore*, 405 F.3d at 1214.

Here, the Commissioner concedes that the ALJ did not specifically discuss the PRTFs in his decision. The Commissioner correctly notes, however, that state agency psychologists completed PRTFs and that the ALJ appropriately incorporated the PRTF analysis in his decision.

7

Indeed, the record reflects that state agency psychologists completed PRTFs in April and October 2006 (Tr. 292-305, 381-94). As the PRTFs indicate, the state psychologists found Plaintiff had no episodes of decompensation of extended duration and had only mild to moderate limitations as to her activities of daily living, her social functioning, and her concentration, persistence, or pace (Tr. 302, 391).

Although the ALJ does not make an explicit finding as to the broad functional areas, he discusses each functional area and Plaintiff's limitations with respect to each. His discussion of the four broad functional areas in the decision comport with the findings set forth in the PRTFs and are supported by the medical evidence in the record. For instance, in discussing Plaintiff's activities of daily living, the ALJ noted that consultative psychologists Dr. Alan Dubro and Dr. Melissa Trimmer reported that Plaintiff could dress herself independently, maintain her hygiene independently, prepare meals, clear her apartment, do her laundry, shop for food with assistance from her boyfriend, drive on her own, and manage money (Tr. 20,155, 244). As to Plaintiff's social functioning, the ALJ noted that, although Dr. Joel Gleason determined that Plaintiff would have marked difficulties in maintaining social functioning, the ALJ found that the medical evidence of record does not support such a conclusion. Instead, the record shows that Plaintiff has friends and family with whom she regularly socializes, including a boyfriend with whom she lives (Tr. 22, 155, 244). Regarding Plaintiff's concentration, persistence, and pace, the ALJ noted that the Plaintiff has a low to average range of cognitive functioning, her attention and concentration are intact, and her thought processes are coherent (Tr. 22, 154, 244). Plaintiff maintained the ability to follow and understand simple directions and instructions and make

appropriate decisions indicating any psychiatric problems are not significant enough to regularly interfere with her ability to function (Tr. 155). Finally, the ALJ conceded that Plaintiff has a history of mental problems and has experienced episodes of decompensation but found that she responded well to treatment (Tr. 22). While he found that her mental impairment might impose some functional limitations, the ALJ determined that Plaintiff's mental impairment would not significantly interfere with her ability to perform substantial gainful activity (*id.*). In making that determination, the ALJ afforded significant weight to the opinions of the state agency medical consultants finding that they are consistent with the other medical evidence of record (Tr. 23).

Upon review, therefore, the ALJ's decision addressed the four broad functional areas as well as the impact of the Plaintiff's mental impairments on those areas (Tr. 20, 22-23). Although the ALJ did not explicitly reference the PRTF nor rated the limitations in the four functional areas, the ALJ's discussion of the medical evidence appropriately addressed the four functional areas of the PRTF and was consistent with the findings in the PRTFs of record (Tr. 19, 20, 22-23, 155, 244, 292-305, 381-94). Accordingly, the ALJ properly incorporated the PRTF analysis into his decision and his analysis is supported by substantial evidence.

### 2. Severe Impairments and RFC

Plaintiff next contends that the ALJ erred by failing to find her post-traumatic stress disorder, borderline personality traits, asthma, and degenerative disc disease constituted severe impairments and, therefore, failed to properly consider those impairments in determining her RFC. A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Heatly v.*

*Commissioner of Social Security*, 382 Fed. App'x 823, 824 (11th Cir. 2010). Basic work activities include the abilities necessary to do most jobs, including: physical functions, like walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes that occur in a work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). An impairment is not classified as severe where the abnormality is "so slight and its effect is so minimal that it would clearly not be expected to interfere with the individual's ability to do work...." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant bears the burden of showing she has a severe impairment. *Id.*

Here, the ALJ could have found Plaintiff's post-traumatic stress disorder, borderline personality traits, asthma, and degenerative disc disease constituted severe impairments at step two. His failure to do so was harmless, however, because the finding of *any* severe impairment is enough to meet the demands of step two. *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). Indeed, step two acts as a filter. *Id.* When a severe impairment is shown, regardless of whether it is a single severe impairment or a combination of impairments that together qualify as severe, the requirement at step two is satisfied. *Id.* Since the ALJ found that Plaintiff had the severe impairments of affective disorder and drug and alcohol abuse in sustained remission at step two, the ALJ continued on in the sequential analysis. The ALJ accordingly applied the appropriate legal standard at step two.

Following his finding at step two, the ALJ proceeded in the sequential analysis and

determined Plaintiff's RFC and ability to perform past relevant work (Tr. 17-23).  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  To determine a claimant's RFC, an ALJ makes an assessment based on *all* of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms, whether severe or not.  20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).

In his decision, the ALJ appropriately discussed Plaintiff's impairments and their effect on Plaintiff's RFC.  The ALJ determined that Plaintiff did not have an "impairment or combination of impairments" that met or equaled a listing, thereby satisfying the ALJ's duty to consider the impairments in combination.  *See Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1999).  After considering Plaintiff's impairments, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work with moderate limitations in concentration, persistence and pace, and social functioning (Tr. 21).  In doing so, the ALJ discussed the medical evidence and explicitly addressed Plaintiff's back pain, asthma, bipolar disorder, and post-traumatic stress disorder (Tr. 21-22).  For instance, the ALJ noted that the Plaintiff had a normal gait and motor strength in the lower extremities, she could heel and toe walk and perform most activities during evaluation, and she required no assistive devices (Tr. 22, 251, 357).  The ALJ also found that Plaintiff's ability to perform various activities of daily living belied her claims of disabling back pain (Tr. 22, 251, 357).  Namely, Plaintiff's ability to cook, clean, do laundry, drive, and shop indicated that her back impairment was not severe enough to be disabling.  Additionally, the ALJ found that the record showed that Plaintiff's asthma was

stable and controlled with the use of medication (Tr. 22, 250, 356). As with the asthma, the ALJ recognized Plaintiff's diagnosis of post-traumatic stress and other mental issues but noted that the evidence shows that her medical conditions have responded well with medication (Tr. 22, 190-91, 197, 202, 206-07). Upon review of all the evidence, therefore, the ALJ considered all of Plaintiff's impairments and correctly determined that Plaintiff retained the RFC to perform a reduced range of light work with limitations in concentration, persistence and pace, as well as limitations in social functioning (Tr. 21). Accordingly, the ALJ applied the appropriate legal standards and his decision is supported by substantial evidence.

### 3. Medical Opinions

Finally, Plaintiff alleges that the ALJ erred with regard to the medical opinions by (1) discrediting Dr. Earl Teller's opinion simply because it was obtained by Plaintiff's attorney and (2) affording little weight to the opinions of Dr. Joel Gleason and Dr. Himanshu Chandarana. In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory

findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). In fact, the ALJ may reject any opinion when it supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

### a. Dr. Teller

In his decision, the ALJ afforded little weight to the opinion of Dr. Teller for two reasons; namely, the ALJ noted that Dr. Teller was an examiner paid by Plaintiff to make determinations regarding her case and his findings were inconsistent with the other medical evidence of record and Plaintiff's activities of daily living (Tr. 23). Dr. Teller met with Plaintiff once in October 2008 upon referral by her attorney to conduct a psychological evaluation of Plaintiff (Tr. 161-68). Dr. Teller diagnosed Plaintiff as having Bipolar I Disorder without psychotic features as well as having Polysubstance Dependence in full sustained remission (Tr. 167). He noted that Plaintiff had a history of Borderline Personality Disorder and assigned Plaintiff a GAF of 50 (*id.*). Dr. Teller recommended that Plaintiff continue with psychiatric

treatment, including psychotropic medication as well as individual and group therapy (Tr. 167-68). Dr. Teller opined that Plaintiff's prognosis for any significant improvement in her psychiatric symptoms was quite poor given the chronic nature of her mental illness and frequent psychiatric decompensation most of her life and that her prognosis for success at gainful employment was also quite poor given that she had not historically been able to keep a job primarily due to her mental illness (Tr. 168).

Dr. Teller subsequently completed a Psychiatric/Psychological Impairment Questionnaire in which he stated that Plaintiff's depression and anxiety constituted her most severe conditions (Tr. 169-76). According to Dr. Teller, Plaintiff had marked limitations in the following areas: ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods of time; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 172-73). Dr. Teller found no more than moderate limitations in all other categories of mental activities (Tr. 172-74). He noted that Plaintiff had multiple episodes of psychiatric decompensation while she had been employed, which had resulted in termination and thereby triggered more intense decompensation (Tr. 174-75). He further noted that, when she is relatively stable, she can only tolerate low stress (*id*). Dr. Teller reiterated that the prognosis for any significant improvement in her psychiatric symptoms is quite poor given the chronic nature of her mental illness and her frequent episodes of psychiatric decompensation, which have occurred most of her life (Tr. 169).

Furthermore, Dr. Teller opined that Plaintiff's mental impairment would likely last at least twelve months and that Plaintiff was likely to be absent from work as a result of her mental impairments more than three times a month (Tr. 175-76).

Dr. Teller's opinion was inconsistent with his own records, the other evidence of record, and Plaintiff's activities of daily living. Specifically, in his clinical findings, Dr. Teller noted that Plaintiff did not have a perceptual or thought disorder and displayed an excellent memory, good concentration, good insight, good judgment, and intellectual functioning within the high average range (Tr. 163, 166-67). Notwithstanding, he opined that Plaintiff would have marked limitations in her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods of time. These limitations clearly conflict with Dr. Teller's findings upon his examination of Plaintiff.

Moreover, Dr. Teller's opinion conflicted with the other evidence of record and Plaintiff's activities of daily living. Notably, in March 2008, Plaintiff met with consultative examiner Dr. Melissa Trimmer (Tr. 242-45). Dr. Trimmer found Plaintiff cooperative with coherent and goal-directed thought processes, intact attention and concentration, intact recent and remote memory, average intellectual functioning, and good insight (Tr. 243-44). Plaintiff reported that she was able to dress, bathe, and groom herself; could do laundry, shopping, manage money, and drive; got along well with friends and family; and spent her days doing chores, reading, talking with friends and family, watching television, and listening to the radio (Tr. 244). Dr. Trimmer opined that Plaintiff appeared to be capable of understanding and following simple instructions and directions, capable of performing most complex tasks independently, capable of

15

maintaining attention and concentration for tasks, could regularly attend to a routine and maintain a flexible schedule, capable of learning new tasks, appeared to use fair to good judgment when making decisions, and appeared to be able to relate to and interact appropriately with others although she appeared to have difficulty dealing with stress (*id*.).

Similarly, in March 2008, Plaintiff had a consultative exam with Dr. Fathy Saad (Tr. 250-53). Dr. Saad found Plaintiff dressed appropriately, maintained good eye contact, appeared oriented in all spheres, had no evidence of hallucinations or delusions, had no evidence of impaired judgment or significant memory impairment, had a normal affect, and denied suicidal ideation (Tr. 252). Although Plaintiff reported a history of depression and anxiety and mental health treatment, she appeared in no acute distress (Tr. 250-51). Plaintiff further reported that her activities of daily living included the following: assisting with cooking and cleaning, doing laundry once per week, shopping once per week, showering herself four to seven times per week, bathing herself four to seven times per week, dressing herself four to seven times per week, listening to the radio, and socializing with friends (Tr. 251).

In November 2008, Plaintiff met with consultative examiner Dr. Alan Dubro (Tr. 152-56). Dr. Dubro found that Plaintiff was able to follow and understand test directions and instructions and her attention span and concentration were adequate for testing purposes (Tr. 153). Testing revealed that Plaintiff performed in the low average range of cognitive functioning (Tr. 154). Based on his evaluation, Dr. Dubro opined that Plaintiff could follow and understand simple directions and instructions, capable of performing both simple and complex tasks independently, capable of interacting adequately with others, capable of making appropriate

16

decisions, and capable of regularly attending to a routine and maintaining a schedule (Tr. 155). Notably, Dr. Dubro found that the results of the examination appeared consistent with psychiatric problems but that those problems were not significant enough to interfere with Plaintiff's ability to function on a daily basis (Tr. 155). Further, Dr. Dubro completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which he found mild restrictions only in Plaintiff's ability to interact appropriately with the public, supervisors, co-workers, usual work situations, and changes in a routine work setting (Tr. 157-58).

As the foregoing demonstrates, the findings of Dr. Trimmer, Dr. Dubro, and Dr. Saad, as well as Plaintiff's activities of daily living, indicate Plaintiff does not have the level of limitations found by Dr. Trimmer and does not require the severe restrictions Dr. Teller set forth. Combined with the conflict between Dr. Teller's own findings and his opinion, Dr. Teller's opinion was not entitled to significant weight. Irrespective, Dr. Teller saw Plaintiff on only one occasion, and, thus, his decision was not entitled to great weight. *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004). Accordingly, the ALJ properly afforded Dr. Teller's opinion little weight and his decision to do so was supported by substantial evidence.[2]

### b. Dr. Gleason

The ALJ also afforded little weight to the opinion of Dr. Gleason, even though he was a treating physician, because the ALJ found Dr. Gleason's opinion inconsistent with the other medical evidence of record and with Dr. Gleason's own treatment records concerning Plaintiff's

---

[2] The ALJ's reference to Plaintiff's procurement of Dr. Teller's opinion as a basis for discounting that opinion is thus harmless.

condition (Tr. 23). As the record indicates, Dr. Gleason treated Plaintiff from 2005 through 2008 and initially treated Plaintiff for bipolar mood disorder, post-traumatic stress disorder, alcohol dependence in partial remission, marijuana dependence, polysubstance abuse in partial remission, and Borderline Personality Disorder Traits (Tr. 186-220, 282-84 318-47, 502-22). In a Psychiatric Impairment Questionnaire completed in December 2006, Dr. Gleason indicated that Plaintiff experienced difficulties with her mood, her psychiatric condition accentuated her chronic pain, and she would not be able to maintain a job long term given her difficulty maintaining concentration (Tr. 282-84). He further opined that Plaintiff would have marked difficulties in social functioning and would often have deficiencies of concentration, persistence, or pace that would result in failure to complete tasks in a timely manner in work settings (Tr. 283). Dr. Gleason also stated that Plaintiff's impairments or treatment would cause her to be absent from work more than twice per month (*id.*).

At the time of Dr. Gleason's December 2006 assessment, Plaintiff was pregnant and had elected not to take her medication (Tr. 18, 283). Prior to that assessment, however, Dr. Gleason noted that Plaintiff reported that she believed her medication was working well for her and only had some difficulty with mood swings after discontinuing the medication due to pregnancy even though she felt fine without the medications (Tr. 318-19, 321). In fact, Dr. Gleason's notes from December 2006 indicate that Plaintiff stated her mood had been okay without the medication and she preferred not to take medication if she did not have to during her pregnancy (Tr. 213). Dr. Gleason noted that it did not appear that Plaintiff needed to take medication to address her psychiatric illnesses at that time, but Plaintiff would be willing to take medication in the future

if she became more symptomatic (*id.*).  In April 2007, Plaintiff reported to Dr. Gleason that she had been doing well without any medication and her mood had been relatively stable (Tr. 211). Although the record indicates that Plaintiff had increased symptoms while she was pregnant and not taking her medication, Plaintiff's symptoms improved upon resuming her normal medication after her pregnancy  (Tr. 202, 206, 211-18, 283).  Indeed, in September 2009, Plaintiff reported to Dr. Gleason that her mood had been stable, she had been less irritable, and she had not been experiencing the mood swings that had troubled her for many years (Tr. 190).  Accordingly, while the medical evidence shows that she had a history of mental problems, Dr. Gleason's opinion that Plaintiff's difficulties with her mood would prevent her from maintaining social functioning and work, conflicts with his reports that she is able to control her symptoms with medication and now functions well without experiencing mood swings (Tr. 211-18, 282-84).  Given the foregoing, the ALJ correctly discounted Dr. Gleason's opinion as it conflicted with his own findings.

Furthermore, as discussed above, the findings of Dr. Trimmer, Dr. Dubro, and Dr. Saad demonstrate that Plaintiff's mental impairments were not as limiting as Dr. Gleason opined. Instead, the evidence of record demonstrates that Plaintiff had a history of mental impairments, which improved and were properly controlled with medication.  The opinions of the state agency medical consultants further support such a conclusion.  For example, in April 2008, state agency consultant Dr. James Mendelson completed a Psychiatric Review Technique in which he acknowledged that Plaintiff had been diagnosed with bipolar affective disorder, post-traumatic

stress disorder, borderline personality disorder, and alcohol/drug abuse (Tr. 220-33).[3] Dr. Mendelson found, however, that all of Plaintiff's mental status evaluations had been within normal limits except for her mood, which was depressed (Tr. 232). He further found that Plaintiff would have no functional limitations as a result of her mental impairment and noted that her activities of daily living were fully within normal limits from a mental perspective (Tr. 230-32). Given the foregoing, the ALJ properly afforded less weight to Dr. Gleason's opinion as it was inconsistent with the other medical evidence of record as well as his own findings.

### c. Dr. Chandarana

The ALJ likewise afforded little weight to the opinion of Dr. Chandarana as the ALJ found Dr. Chandarana's opinion inconsistent with his own medical findings and the opinions of the consultative examiners (Tr. 23). Dr. Chandarana, a pulmonologist, treated Plaintiff from 2006 through 2007 and diagnosed Plaintiff with bronchial asthma with episodes of acute bronchitis (Tr. 274-78). In November 2006, Dr. Chandarana noted that Plaintiff complained of cough and shortness of breath and had a history of asthma but smoked about one pack of cigarettes per day (Tr. 277-78). Following that, in February 2007, Plaintiff complained of cough, difficulty breathing, and shortness of breath (Tr. 276). Dr. Chandarana diagnosed Plaintiff with acute bronchitis and bronchial asthma (*id.*). At her April 2007 appointment, Plaintiff again complained of shortness of breath and coughing but overall felt better (Tr. 275). Dr. Chandarana diagnosed Plaintiff with bronchial asthma and continued Plaintiff on her current medication (*id.*). Finally,

---

[3] State agency medical consultants are considered experts in the context of a Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

in July 2007, Plaintiff returned to Dr. Chandarana with complaints of cough and shortness of breath and was simply diagnosed as having bronchial asthma (Tr. 274). Dr. Chandarana noted that Plaintiff was doing well and that she admitted to feeling better after having her baby (*id.*).

Subsequently, in December 2007, Dr. Chandarana completed a Pulmonary Impairment Questionnaire (Tr. 178-84). In the questionnaire, Dr. Chandarana opined that Plaintiff's prognosis was fair but that she was limited to sitting for eight hours per day, standing and walking two hours per day, and could not lift or carry more than twenty pounds (*id.*). In addition, Dr. Chandarana opined that Plaintiff would experience fatigue and other symptoms severe enough to interfere with attention and concentration frequently and that her impairments would last at least twelve months (Tr. 183). As a result, Dr. Chandarana opined that Plaintiff should avoid odors, fumes, gases, solvents and cleaners, temperature extremes, humidity, dust, soldering fluxes, and chemicals (Tr. 183-84).

Although Dr. Chandarana found that Plaintiff would experience fatigue and other symptoms that would interfere with her attention and concentration, the evidence of record indicates otherwise. For instance, in June 2006, Plaintiff met with Dr. Ladapo Shyngle for a consultative examination during which Plaintiff indicated that she did fairly well on her asthma medication and had controlled her last asthma attack with that medication (Tr. 356). During the examination with Dr. Shyngle, Plaintiff denied any emergency room visits relating to asthma exacerbation (*id.*). Dr. Shyngle found no irregularities with Plaintiff's chest and lungs and noted that her lungs were clear to auscultation and percussion was normal (Tr. 358). After conducting his examination, Dr. Shyngle found no limitations relating to Plaintiff's asthma (Tr. 359).

Although Plaintiff experienced increased symptoms of asthma while she was pregnant and not taking her medication, Plaintiff admitted these symptoms improved and were controlled upon resuming her normal medication (Tr. 274-78). Indeed, during her July 2007 appointment with Dr. Chandarana, Plaintiff reported that she delivered her baby two months prior and felt better (Tr. 274). Further, in her March 2008 appointment with Dr. Saad, Plaintiff reported that her asthma was stable on medication, and she denied hospital admissions or emergency room visits for shortness of breath, although she had visited the emergency room for asthma in 1991 (Tr. 250). Upon examination, Dr. Saad found Plaintiff's lungs clear to auscultation and her percussion was normal (Tr. 252). These findings indicate that Plaintiff's asthma was controlled by medication and only presented issues when she did not take her medication thereby conflicting with Dr. Chandarana's findings.

Plaintiff's habit of smoking one to one and a half packs of cigarettes during the course of a week further undermines Dr. Chandarana's findings as to the severity of Plaintiff's asthma condition as well as her need for environmental restrictions (Tr. 251, 277). *See Holley v. Chater*, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996) ("[T]he continued use of cigarettes by plaintiff suggests that his pulmonary condition is not as severe [as] he alleges and further supports the ALJ's decision to accord [plaintiff's] subjective complaints diminished weight."). Considering all the evidence of record, therefore, the ALJ properly afforded Dr. Chandarana's opinion less weight as it conflicted with his own findings and the other evidence of record. Accordingly, the ALJ's assessment of Dr. Chandarana's opinion was supported by substantial evidence.

## IV.

For the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be affirmed.

IT IS SO REPORTED in Tampa, Florida, on this 27th day of July, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:
Hon. Elizabeth A. Kovachevich
Counsel of Record